**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA**
**_____ DIVISION**

# EMPLOYMENT DISCRIMINATION COMPLAINT FORM

**TO BE USED BY PRO SE LITIGANTS IN ACTIONS
FILED UNDER 42 U.S.C. § 2000e, et seq., (Title VII of the Civil Rights Act)
29 U.S.C. § 621, et seq., (Age Discrimination in Employment Act)
OR 42 U.S.C. § 12112, et seq., (Americans with Disabilities Act)**

Rachel Ann Sheppard          ,

(Name of Plaintiff)

VS.

CASE NO: 5:05cv190-MCR/MD
(To be assigned by Clerk)

_____,
MacAulay Brown Inc          .

(Name of Defendant which should
generally be the name of the Employer.)

**ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:**

05 SEP 15 PM 3: 02

FILED

I. **PARTIES:**

A. **PLAINTIFF:**

State your full name, full mailing address, and phone number:

Name of Plaintiff:     Rachel Ann Sheppard

Mailing address:     927 Rainelli Court

                          Panama City, FL 32404

Phone #     ( 850 ) 215-7555

B. **DEFENDANT(S):**

State the name of the Defendant in the first line (place where you were employed or sought employment) and mailing address.

     Defendant's name:     MacAulay Brown Inc

     Mailing address:     6102 East Highway 98

                               Panama City, FL 32404

**PLEASE CONTINUE ANSWERING ALL QUESTIONS ON THE FOLLOWING PAGES**

2

## II. FACTUAL BACKGROUND:

1. Defendant Employer is: __MacAulay Brown Inc__
2. Defendant's business is: __Government Contractor__
   Business address - location of headquarters: __4021 Executive Drive__
   __Dayton, OH 45430__
3. Plaintiff ☐ sought employment from Defendant on ____
   or ☒ was employed by Defendant from __30 June 2003__ until __Present__.
4. The location where Plaintiff was employed or sought employment was:
   (street address) __139 Barnes Drive Suite 1__
   (city/county and state) __Tyndall AFB, FL 32403__
5. Plaintiff filed charges against Defendant with the Equal Employment Opportunity Commission on: __13 April 2004__.
6. The Respondent(s) named on the EEOC charging document: __MacAulay Brown Inc__ ____. (attach document).
7. Defendant discriminated against Plaintiff as described in Section III of this complaint on or about __12__ (day) __April__ (month), and __2004__ (year).
8. As claimed in the EEOC charging document, Defendant discriminated against Plaintiff because of Plaintiff's:  ☒ gender/sex __Female__ (please identify)
   ☐ race ____              ☐ color ____
   ☐ religion ____           ☐ national origin ____
   ☐ disability ____         ☐ age  Date of Birth is ____
   ☐ other (explain): ____
9. Defendant discriminated against Plaintiff when Defendant:
   ☐ failed to hire Plaintiff          ☐ terminated Plaintiff's employment
   ☐ failed to promote Plaintiff       ☒ retaliated against Plaintiff
   ☐ failed to accommodate Plaintiff's disability    ☒ unequal treatment
   ☐ other (explain): ____
10. The EEOC issued a Notice of Right to Sue which was dated: __21 June 2005__ and which was received by Plaintiff on __29 June 2005__.
    » »  The notice is attached to this complaint.   ☒ yes  ☐ no  « «
11. Plaintiff also filed charges concerning this discrimination with the Florida Commission on Human Relations on: __17 Nov 2004__ or ☐ did not file.

3

**JURISDICTIONAL AND STATUTORY BASIS OF CLAIM:**

This action is brought for discrimination in employment pursuant to:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin)

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117

*Note: To bring suit in federal court under any of the above Acts, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.

### III. STATEMENT OF FACTS:

Briefly state the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> *You must set forth separate factual allegations in separately numbered paragraphs.* Additional pages may be added to state the relevant facts if necessary. Absent extraordinary circumstances, no more than two (2) additional pages should be attached.

12 Apr 04: Discrimination occurred when my supervisor, Steve Prier, informed me I am not seen as an equal to any co-workers due to the fact that I am a young woman and at the time all of my co workers were male retirees. I was told I use my looks to get away with things on a daily basis; that all I have to do is flash my smile and I get whatever I want; and that I am the only employee my supervisor has to monitor because he has a bad feeling about me.

13 Apr 04: After bringing this to the attention of higher management, Mike Gelsleichter, I was told I was over-reacting.

1 May 04, I was promoted so that I would stop complaining to management about the situation. I was put on a ninety (90) day probationary period which has never applied to any other employee in the division.

7 July 04: Discussion for end of probation. I was accused of falling asleep at my desk during duty hours. An explanation was given for a medical condition that warrants my sleepiness. I requested my doctor write a letter to MacB. Accusations were also made that I was inspiring office gossip which contributes to my immaturity. I have been subjected to different terms and conditions, i.e. every time I left my desk I had to tell management where I was going and when I was returning. My leave and compensation time are strictly monitored to ensure I am not being misleading.

During this probationary period I was given impossible deadlines to meet causing me to work excessive overtime daily.

30 July 2004: Letter of counseling and assigned to another probationary period (thirty days). The accusations included

4

scanning pictures on to my government computer. I have never had a scanner at my desk nor any device as such. I was accused of falling asleep at my desk. At this point I disclosed my full medical history to management, Mr. Prier and Mr. Gelsleichter to no avail. False accusations were also made to conducting personal business at work and researching material for off-duty homework.

30 August 04: At the end of the period, I did not receive any feedback as to my job performance. I brought this issue to the attention regional manager, Bob Larson, who took an action to converse with the company's human resource department and assured me I would receive my feedback.

8 October 04: Received feedback from Mr. Gelsleichter stating that he was pleased with my work performance.

Nov 04- March 05: continued harassment of my leave schedule with snide comments referring to my appearance, i.e. "Looking good today, Rachel. You smell damn good today, Rachel."

16 March 05: Given three days to complete employee self evaluation while all other MacB employees received two weeks.

24 March 05: Mr. Prier told government leadership that I was unable to attend a meeting alone and recommended someone accompany me on my trip.

7 April 05: Received employee evaluation from Mr. Gelsleichter with little to no comments. Verbal comments were given in a positive manner and I was reassured that neither he nor Mr. Prier are out to fire me.

12 April 2005: After filing a trip report, Mr. Prier sent an email to the entire division (forty-three individuals to include the commander) picking my report apart and questioning why two people were on that trip when he suggested it. (degredation of character).

13 April 05: Troy Stalvey, co-worker/mentor, informed me that Mr. Prier was holding a grudge against me and trying to make things difficult on me so that I would quit my job. Arrangements were made to meet with Mr. Gelsleichter about this.

18 April 05: Mr. Gelsleichter confronted me about my complaint to the EEOC. He told me my case was hearsay and it was my word against his. I was also told to meet with Mr. Prier and work out the issue. I did not agree.

19 May 05: Sought further medical treatment for severe mental depression and anorexia nervosa. Started weekly therapy.

9 June 05: Mr. Stalvey approached me on behalf of Mr. Gelsleichter and Mr. Prier on the subject of mediation. I informed him it was up to the EEOC. He then told me that if I wanted to salvage what was left of my career I would drop my complaint.

13 June 05: Mr. Stalvey approached me very disturbed. He informed me that Mr. Gelsleichter and Mr. Prier informed him that if he wanted to keep his career that he would stay out of the situation and let me suffer. (Continued on next page.)

12. The facts as set forth above in Section III of this complaint:
   ☒ are still being committed by Defendant against Plaintiff
   ☐ are no longer being committed by Defendant against Plaintiff
13. Plaintiff:   ☒ still works for Defendant   ☐ no longer works for Defendant, or not hired.

27 June 05: Submitted paperwork for Family Medical Leave due to severe mental depression and anorexia nervosa.

Stayed on Short Term Disability from 1 July through 15 August 05.

15 August 05: Returned to a hostile work environment the same as when I went on medical leave.

12. The facts as set forth above in Section III of this complaint:
  ☐ are still being committed by Defendant against Plaintiff
  ☐ are no longer being committed by Defendant against Plaintiff

13. Plaintiff:  ☐ still works for Defendant   ☐ no longer works for Defendant, or not hired.

5

14. If this is a disability-related claim, did Defendant deny a request for a reasonable accommodation?  ☐ yes  ☐ no  Explain: _____
_____

## IV. REQUEST FOR RELIEF:

As relief from the allegations of discrimination as stated above, Plaintiff prays that the Court grant the following relief to Plaintiff:
- ☐ Defendant be directed to employ Plaintiff
- ☐ Defendant be directed to re-employ Plaintiff
- ☐ Defendant be directed to promote Plaintiff
- ☒ Defendant be directed to _implementation of EEO training program for all employees and managers_

As additional relief to make Plaintiff whole, Plaintiff seeks: Terminate the employment of Mr. Prier for his actions; demotion of Mr. Gelsleichter from any management position; and the appointment of a human resources manager for Tyndall Operations.
- ☐ injunctive relief (please explain): _____
- ☒ monetary damages (please explain): $300,000 compensatory damages; $500,000 punitive damages
- ☒ costs and fees involved in litigating this case.

and such other relief as may be appropriate, including attorney's fees, if applicable.

Plaintiff seeks a  ☒ jury trial   ☐ bench trial (without jury)

**I, hereby, declare under penalty of perjury that the foregoing statements have been written by me and are true and correct.**

15 Sep 05
(Date)

(Signature of Plaintiff)

Rachel A. Sheppard
(please print or type name legibly)

927 Rainelli Court

Panama City, FL 32404

(full mailing address)

Revised 08/2005

6

EEOC Form 161 (3/98)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Rachel Sheppard<br>927 Rainelli Court<br>Panama City, FL 32404 | From: Tampa Area Office<br>501 East Polk Street<br>Room 1000<br>Tampa, FL 33602 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 151-2005-01952 | **Maria I. Melendez, Investigator** | (813) 228-2065 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]* for **Manuel Zurita, Director**          6/21/05 (Date Mailed)

Enclosure(s)

cc: Katherine J. Gaskill, PHR
Human Resources Manager of Adm.
MACAULAY - BROWN INC
4021 Executive Drive
Dayton, Ohio 45430

TAMPA AREA OFFICE
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
TIMBERLAKE FEDERAL BUILDING ANNEX
501 E. POLK STREET, 10TH FLOOR
TAMPA, FLORIDA 33602

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

7003 3110 0006 4628 1798

CERTIFIED MAIL

7003 3110 0006 4628 1798

U.S. OFFICIAL MAIL
U.S. POSTAGE
2.67



## State of Florida
## Florida Commission on Human Relations

*An Equal Opportunity Employer • Affirmative Action Employer*

2009 Apalachee Parkway • Suite 100 • Tallahassee, Florida 32301-4857
(850) 488-7082
Web Site http://fchr.state.fl.us

**Jeb Bush**
*Governor*

**Rita Barreto Craig**
*Chair*

**Derick Daniel**
*Executive Director*

Dear Complainant,

Please find attached, a Florida Commission on Human Relations (FCHR) Questionnaire Form that will be a part of your Charge of Discrimination. We ask that you respond to all questions pertaining to each basis you select. You do not have to complete questions for any basis that does not apply to your case.

The FCHR is committed to thoroughly investigating allegations of discrimination committed in the State of Florida. In order for our agency to perform a thorough investigation, however, it is extremely important that you complete each required form in its entirety. You must respond to all questions on the form or forms you select. A general narrative regarding your charge will not suffice. You must complete a response to each specific question on the form.

We realize that some of the forms are lengthy, and some of the questions are very detailed, but they are necessary. Detailed information will give the FCHR an opportunity to review your case faster and begin the process of investigating the case much quicker.

Discrimination cases tend to be very complex and involved, and sometimes the outcome of cases may change depending upon the existence or nonexistence of one or two facts. By providing all pertinent facts of your charge at the beginning of the investigation while that information is still fresh in your mind, ensures that the FCHR will obtain a current and complete account.

Providing incomplete responses to specific requests or failure to provide responses at all will only delay the investigation of your case.

So, please be as detailed and complete in your responses as possible, so that the FCHR might be as detailed and complete in its investigation. If you encounter any difficulty in completing the form, please call the FCHR at (850) 488-7082.

Sincerely,

Derick Daniel
Executive Director

---

### COMMISSIONERS

| | | | |
|---|---|---|---|
| **Donna Elam, Vice Chair** *Orlando* | **Gayle Cannon** *Lake City* | **John Corbett** *West Palm Beach* | **Roosevelt Paige** *Orange Park* |
| **Keith A. Roberts** *Dania Beach* | **Dominique B. Saliba** *Miami Lakes* | **Aletta Shutes** *Tallahassee* | **Gilbert M. Singer** *Tampa* |
| **Billy Whitefox Stall** *Panama City* | | **Mario Valle** *Naples* | **P. C. Wu** *Pensacola* |

# Florida Commission on Human Relations

## • Technical Assistance Questionnaire for Employment Complaints

YOU MUST COMPLETE PAGES 1-3 FOR ALL CLAIMS OF EMPLOYMENT DISCRIMINATION

*Your answers to this questionnaire are confidential pursuant to Florida Statute 760.11(12)*
(Please answer the following:)

1. **CONTACT/PERSONAL INFORMATION**

   a. Name: ☐Mr.  ☐Ms.  ☐Mrs.  <u>Rachel</u>           <u>Ann</u>                <u>Sheppard</u>
      (First)            (Middle Name or Initial)        (Last)

      Mailing Address: <u>927 Rainelli Court</u>

      Zip Code: <u>32404</u>   City: <u>Panama City</u>   County: <u>Bay</u>   State: <u>FL</u>

   b. If you want us to contact you by e-mail, please provide your e-mail address: <u>krhsheppard@knology.net</u>

   c. Home Phone: (<u>850</u>) <u>215-7555</u>   Work Phone: (<u>850</u>) <u>283-6206</u>

      Cell Phone: (<u>850</u>) <u>381-1913</u>   Date Of Birth: <u>09</u> / <u>09</u> / <u>1980</u>
                                                              mm     dd      yyyy

   d. If you will be represented by an attorney, please provide the attorney's name, address and phone number

      Name: <u>Rusty Shepard and Jean Downing</u>   Phone: (<u>850</u>) <u>230-5550</u>

      Address: <u>2211 Thomas Drive  Panama City Beach, FL  32408</u>

   e. Please provide the name and telephone number of an individual who does not live with you but would know how to reach you:

      Name: <u>Leon Sheppard</u>   Phone: (<u>850</u>) <u>871-3268</u>

   f. Have you filed a complaint of discrimination with the FCHR, EEOC, HUD or any local agency within the last year? If yes, complete below:

      Agency Name: _____

      Approximate date filed: ___/___/___   Complaint or Charge Number, if known: _____
                              mm  dd  yyyy

2. **TYPE OF COMPLAINT:** Please indicate whether you wish to file a(n):

   ☒ **Employment Claim** *(Were you Terminated, Suspended, Denied Promotion, Laid Off, Unfairly Disciplined, Harassed, Denied Training, Not Hired, Forced to Resign, or Given Different Terms and Conditions?)*
   **(Complete pages 1-5)**

   ☐ **Handicap/Disability Claim**            ☒ **Sex Discrimination Claim**
   **(Complete pages 1-3, then pages 6-7)**      **(Complete pages 1-3, then pages 8-9)**

1                                               FCHR Form 1 - Effective March 9, 2004

3. **ESTABLISHING JURISDICTION**

   a. Today's Date  11 / 17 / 2004
                      mm / dd / yyyy

   b. What was the **MOST RECENT DATE** or **LAST DATE** that you were allegedly discriminated against (i.e. fired, laid off, disciplined, harassed, etc.)?  11 / 17 / 2004
                                                        mm / dd / yyyy

   c. What is the approximate number of persons employed by the employer that you are alleging discriminated against you?  600

If your answer to 3b. is over *365 days before today* or your answer to 3c. is *less than 15*, please stop and contact a Commission customer service representative at (1-800-342-8170 or 1-850-488-7082) **OR** stop and contact an attorney or your local legal aid society.

4. **BASIS FOR DISCRIMINATION**

   a. Below are the legal bases for discrimination. Check all the bases and subsets that apply to your alleged discrimination. (**ONLY CHECK THE BASES THAT SPECIFICALLY APPLY TO YOU**) If one or more of these boxes are checked, you must answer *Questions for Employment Discrimination Claims* on pages 4-5.

   - ❏ **RACE:** ❏ Black ❏ White ❏ Asian/Pacific Islands ❏ American Indian/Alaskan Native
     ❏ Other _____ (Please identify)
   - ❏ **COLOR:** ❏ Light skinned ❏ Dark skinned ❏ Other _____ (Please identify)
   - ❏ **NATIONAL ORIGIN:** ❏ Hispanic ❏ Mexican ❏ Arab/Afghani/Middle Eastern ❏ East Indian
     ❏ Other _____ (Please identify)
   - ❏ **MARITAL STATUS:** ❏ Married ❏ Single ❏ Divorced ❏ Widowed
   - ☒ **SEX:** ❏ Female ❏ Male ❏ **AGE:** ❏ Under 40 ❏ 40-69 ❏ 70 & over
   - ❏ **RETALIATION**
   - ❏ **RELIGION:** _____ (Please identify)
   - ❏ **DISABILITY/HANDICAP** _____ (Please identify) ❏ Physical ❏ Mental

If you believe you have been discriminated against because of your disability, you must answer *Questions for Handicap/Disabilities Claims* on page 6-7.

   b. Employment Action upon which your complaint is based: (Check all that apply)
   - ❏ Terminated   ❏ Suspended   ❏ Denied Promotion   ❏ Laid Off
   - ☒ Unfairly Disciplined   ☒ Harassed   ❏ Denied Training   ❏ Not Hired
   - ❏ Forced to Resign   ☒ Given Different Terms and Conditions
   - ❏ Denied Reasonable Accommodation for Disability
   - ☒ Sexually Harassed

If you believe you have been sexually harassed, you must answer *Questions for Sex Discrimination Claims* on pages 8-9.

   - ☒ Other  Age discrimination due to young age (24) compared to other co-workers (at least 40)  (Please identify)

5. **EMPLOYMENT INFORMATION**

a. Respondent information. Provide the name of the business or person, name of a contact person, address, and phone number that you are alleging discriminated against you.
   Name of Company or Person: __MacAulay Brown, Inc specifically Stephen C. Prier__
   Personnel Officer or other Contact Person: __Vada Hopper__
   Mailing Address: __P.O. Box 40037   833 Mississippi Road Bldg 1140__
   City: __Tyndall AFB__   County: __Bay__   State: __FL__
   Zip Code: __32403__   Phone: (__850__) __283-4555__   Email Address, if known: __Tyndall AFB__

b. Employment information:
   Your job title, or job applied for: __Joint CBRN Training Development Analyst__
   Your employment start, or application date: __30 June 2003__
   Your last day of employment, if applicable: __N/A__

6. **STATEMENT OF DISCRIMINATION**
   Complete the following statement: I believe I have been discriminated against pursuant to Chapter 760, Florida Statutes, and/or Title VII of the Federal Civil Rights Act of 1964, and/or the Age Discrimination in Employment Act, and/or the Americans with Disabilities Act, as applicable, for the following reason(s):

1. I am constantly told that if my supervisor had anything to do with it that I would not have been hired due to my age & experience level. I was chosen by the military member in the division who has since retired.

2. I am much younger than all of the employees here. The youngest age next to mine (24) is around 40 years of age.

3. I am a professional, attractive, young female, and most of these folks have not worked with/along side a 24-year old in a long time. I am the age of most of their children and some grand children. I do not dress provocatively or act in such a way for this treatment.

4. I chose to separate from the USAF and start my career while I am still young. My co-workers chose to stay in the military for 20+ years to retire and work after retirement. By the time I am most of their ages, I could be the boss here (so I'm told) & that is held against me.

5. I am strongly pursuing my Bachelor degree in Emergency Management & suddenly everyone is too. They don't want me to be smarter than them, or so it seems. A handful of these guys don't have a college education and don't want to showed up by a young girl.

I understand that information on this Questionnaire may be shared, in whole or part, by the Florida Commission on Human Relations with the U.S. Equal Employment Opportunity Commission and the Respondent indicated.

\* **SPECIAL NOTE:** If today's date is within 21 days of required final filing date (365 days [or 300 days for dual filing with EEOC] from date of alleged discrimination stated in item 2.b), I desire to submit this questionnaire as a formal complaint and authorize the Commission to fill out a formal complaint form and send to Respondent and provide a copy for me to sign and return immediately upon receipt.

In order to provide a timely complaint, under penalties of perjury, I declare that I have read this technical assistance form and desire to make it my complaint of discrimination and that the facts stated in it are true. I will advise the agency if I change my address or telephone number and I will cooperate fully with them in the processing of my complaint in accordance with their procedures.

I understand, agree and request Commission assistance

__17 Nov 2004__                    _[signature]_
(Date)                              (Signature of person seeking assistance)


Mail or FAX to:    Florida Commission on Human Relations
                   2009 Apalachee Parkway, Suite 100
                   Tallahassee, Florida 32301
                   Telephone (850) 488-7082; Facsimile (850) 488-5291

# QUESTIONS for EMPLOYMENT DISCRIMINATION CLAIMS

~ What is your protected class: race, religion, marital status, national origin, color, age, sex?
   Caucasian, Baptist, Married, US Citizen, White, 24, Female

~ Who is your employer? How many employees are there?
   MacAulay Brown, Inc. Approximately 700

~ What is your employment position? How long have you been employed at this location?
   Systems Analyst I. Since 30 June 2003

~ Describe in detail the reason you believe you were discriminated against, providing dates.
   01 Jul 03: Upon the first day of work, I realized I had been put into an administrative position (secretary) for the Division Chief (Mr. John Thornton). When Bob Larson hired me from Germany, I was told that I would be working in a Readiness-related position at HQ AFCESA. After bringing this to the attention of my supervisor and his supervisor, it was explained to me that I was put in that position because of my experience level (Four years) even though there were a couple of action officer positions still open that I could have been put in. When my girlfriend got hired, with the same experience level as mine, she was put into an action officer position. My supervisor told me that he had a stack of resumes he could use to fill my position and that I should be happy with what I had. This went on for about four more months until February 2004. This is when I had my performance feedback session. We were to do a self-evaluation on our own performance. I thought that I had done exactly what was asked of me and then some, but my supervisor had a different opinion. On the day of feedback sessions, most of the employees' sessions took approximately 15-20 minutes. Mine lasted two hours. During this feedback, I was informed of the following:
   1. I am by no means a Subject Matter Expert (SME). I don't have enough experience for that. Maybe when I got older I could be an action officer.
   2. I use my looks to get away with things.
   3. All I have to do is flash my smile and I get whatever I want.
   4. I am a young attractive female and I use it to my advantage.
   5. I don't have any credibility meaning that everyone thinks of me as his or her daughter.
   6. If he had anything to do with it, I wouldn't have been hired in the first place.
   7. He has a bad feeling about me that I am not giving the government eight solid hours of work per day. He doesn't know where I am and has to ask someone else if they have seen me or know where I am.
   8.

Exactly one month after this feedback I was promoted into an action officer position. After 90 days there was an evaluation done on 7 July 04 due to the complaints received by management that there was no warning or inkling of any kind that the employee's work performance was evaluated this way for the previous eight months. The 90 day appraisal went about the same, only this time my supervisor and his supervisor were present. It was explained to me that the position I was put into requires at least ten (10) years of experience and that I should think about that. I was written up for doing off duty homework during duty hours. I did do wrong by working on homework, the only thing was that my duty hours are 0700 to 1500. So, at 1500, I would start on my homework because it was easier to concentrate there instead of at home. This is authorized to use the computers for education. I was told it was still not a good idea. I apologized and told them it would not happen again. I was also written up for falling asleep at my desk. At that time I was having to change medications. It takes approximately three weeks at least for the new medicine to start taking effect. Until that happens, I just want to sleep all of the time. I would nod off for about a minute sometimes five minutes and wake right up. I told my leadership about this issue and they said that they would work with me on it. So, when I was written up for it, I was taken aback.

A little over a month later on 30 July 2004, I was put on 30 days of probation for poor work performance. I was accused of the following:
      1. Scanning personal pictures into my government computer.
      2. Doing off duty homework during duty hours.
      3. Falling asleep at my desk.
      4. My quality of work had severely dropped

The funny thing is I don't even have a scanner at my computer desk. When I told this to leadership, their response was; that is just what the government person told us. I was not working on homework this time. My BS degree is in Emergency Management and my job is Full Spectrum Threat Response, so they go hand in hand. I was doing research for a task at work on the FEMA website regarding natural disasters when my government lead came to my desk and assumed I was doing homework. So instead of asking me about it, he just went to my leadership and told them I was working on homework. I was still nodding off at my desk due to medication issues still. My doctor had not gotten me on the right dosages for both of the medications to balance out. Leadership said it didn't matter about my medication and that if I needed time to rest to let them know and they would arrange for some time off to go home and take a nap. I told them that if I did that then they would say that I was never at work. That is what I got written up for in my first performance evaluation. It's a lose-lose situation. At this time I told them what the medication was for in hopes that they would understand. They didn't. When I was told that my quality of work had diminished, I was appalled. It was explained to me that my government lead was spending a considerable amount of time going behind me to correct my mistakes and reworking the task. I asked for an example. The answer I got was this:

While working on a readiness training package (RTP) for TSgt Genova, you were asked to update the information in the document, make the necessary format changes and return it to him by the requested suspense date. You failed to do that and he had to go behind you and update the RTP himself. My explanation to them was: I was given the instruction to take the RTP and go through the technical order (T.O.) and ensure all of the data was still correct. What wasn't correct I was told to use track changes to insert my comments. That is exactly what I did. I was never told that this was incorrect or that there was a problem with my quality of work. What did happen was that TSgt Genova spent time editing the RTP the way he wanted and went to my leadership and told them I wasn't giving him quality products. What he told them was that he wanted me to re-write the RTP with the changes I recommended and update the terminology so that when I gave it back to him all he would have to do is look it over republish it. That isn't what he told me to do so how was I to know that it was incorrect? The answer I got was you should have known that he didn't want a product like that.

So, I was told that TSgt Genova was going to sit down with me and discuss his expectations of me along with developing timelines and milestones for future taskers that would be assigned to me. TSgt Genova did talk with me and discuss his expectations of me and told me that it was his fault that I got into trouble with MacB. That he should have talked with me first and let me know that the projects I was turning in wasn't what he wanted. He apologized and the meeting adjourned.

My probation ended on 30 Aug 04. I sent an email on that day to my leadership requesting a meeting to discuss my performance and provide me some feedback as was told was going to happen in my letter of counseling. My reply to that was that I would have to wait until Mr. Gelsleichter gets back from TDY and when Mr. Prier returns from TDY that he was supposed to leave that afternoon. He also said that they still had to sit down with TSgt Genova and discuss my performance with him and Mr. Thornton. I would receive my feedback the following week. I didn't get my feedback until 20 October. That was only after I had send an email to Vada Hopper (admin/HR) stating that the situation in the office had not gotten better and that I was being given a different set of rules to go by. I carbon copied my attorney on this email. Vada sent the email to Bob Larson and the regional senior vice president of the company along with her advice to pass this information on to some one who will look into the matter and that all of my claims were actionable. She also informed them that the main reason Ms. Sears quit was because of the way she was being treated by Mr. Prier as well. Within a couple of days, Mr. Larson called and scheduled a time for the following Monday (18 Oct 04) to meet with me. On that day, I brought all of my documentation of Mr. Prier's behavior and presented all claims against him. Mr. Larson said I would get my feedback from the probation within the week. He also said that he had notified Mr. Ken Simon (Sr HR) at Dayton (MacB HQ) of the situation developing here, and that if I had any other incidents to call him (Mr. Simon). I still didn't get a phone number for him. It was never

revealed to any MacB employee that Ms. Hopper was not our HR rep, and that we were supposed to be calling Dayton for any questions. I also told them that it would be a good idea to have all leadership attend training on EEO and harassment. Mr. Larson said that he would talk to Mr. Simon about scheduling a time for him to come to Panama City and talk with the employees.

On 18 Nov 04, Mr. Ken Simon (SR HR in Dayton) came to Panama City to discuss affirmative action, EEO, discrimination, sexual harassment, and dress/appearance standards. I spoke with him in a private meeting with Mr. Larson as well and presented all of my information to him and gave him copies of all documentation I had.

-Who discriminated against you?
   Mr. Steve Prier

- What is his/her position? What is his/her position in relation to your position? (i.e. supervisor, co-worker, non-employee, agent of employee, supervisor in another area)
   He is a MacB branch chief. His job title is Senior Joint/International Publications Standardization. He is my immediate supervisor.

- How frequently was the conduct repeated?
   There was at least one incident per week, whether it was against me or Ms. Sears

- Did the conduct interfere with your work performance?
   Yes, I was constantly trying to go above and beyond what was asked of me just so that I would not get an email from him telling me to redo something or that it was incorrect. I started smoking cigarettes again for the first time in two years because off all of the stress and pressure from Mr. Prier. It was all I could do to avoid confrontation with him.

- Were there any witnesses to the incidents you describe? Who? Provide names, addresses and phone numbers.
   No. But after every incident I would tell someone what happened. The following are people that I talk to about this:

| 1) Vada Hopper | 2) Sonni Sears | 3) Mary Reynolds |
|---|---|---|
| 5815 Pinetree Road | 1805 Rhett Place | |
| Panama City, FL 32404 | Lynn Haven, FL 32444 | Panama City, FL |
| (850) 872-0866 (home) | (850) 265-2422 (home) | (850) |
| (850) 819-8297 (cell) | (850) 532-0546 (cell) | (850) 283-6342 (work) |

- Did you tell your employer about the discriminatory actions? When? Provide names, addresses and phone numbers.

    I told my Task leader (Gelsleichter) after every incident listed in the explanation above until Nov 03. That is when I called Mr. Larson regarding my position and salary. All incidents afterward were reported to Mr. Gelsleihter up to September 04. Nothing was getting done about it so I quit talking. Mr. Larson didn't seem to help the matter any even after the first main discriminatory behavior in my performance evaluation.
    Mike Gelsleichter 2324 Woodhaven Place, Lynn Haven, FL 32444
    Home: (850) 271-1824 Work: 850 283-6136 Cell: (850) 624-7506

- If you reported the incident, did the employer take preventative or corrective actions?
    NO. No repercussions were ever enacted for his actions.

- Explain how the offensive conduct affected you. Did you suffer psychologically or physically? Did you see a doctor or a counselor/therapist?
    It disrupted my home life with my husband and daughter. Every day I would come home so upset and emotionally unstable over the situation at work that it would make my husband upset as well. This is one of the main reasons I had to go to the psychiatrist to get my medication regulated because I was so emotional that the current dosage I was on would not suffice. It took almost two months to get the depression under control. I also lost weight during this time. I weighed 124 pounds before this ordeal started and I currently weigh 113 pounds. I would only eat one meal per day because my nerves were on end and it would upset my stomach so. I have difficulty sleeping as well. Thoughts are always going through my head of what might happen the next day that I would go to work. When I get up in the morning I always feel nauseous because I dread going to work afraid of any confrontations that might occur.

- Does the employer have a written anti-harassment policy?
    Yes.

- Are you aware of other complaints about the same alleged perpetrator?
    Yes. Sonni Sears has some of the same issues. She is treated the same way as I am because she is 30 years of age with four years of experience as well.

- Is there any documentation of the incident(s) you describe?
    Yes

- Is there witness testimony or physical documentation that corroborates your testimony? If so, please explain and provide copies, if possible.
    Yes. The witnesses listed above will testify on my behalf of the actions of Mr. Prier. I have numerous emails and feedback paperwork that Steve has written himself. Some of the documentation are transcripts of conversations that had taken place and were immediately written after the incident.

- What was the tangible employment action?

Reprimand and denial of promotion, denial of raise in salary.

- Did the employer give you a reason for the above stated employment action?
Reprimand: Accusations of scanning personal pictures onto a government computer, falling asleep at my desk, conducting research for an off-duty homeowrk assignment, lack of quality of work.
Denial of promotion: I was told that I didn't deserve a promotion.
Denial of salary increase: I was told that I didn't deserve a raise, and that if they gave me a raise it would take away from their (MacB) ability to give people raises that deserve them.

- Why do you believe the employer took the tangible action against you?
My opinion: Mr. Prier does not have a BS degree and the thought of me getting mine before him would drive him crazy. Ex.: When he started taking classes with me, he would always try to show me up in class that he was more knowledgeable that I was and let everyone in the classes know that he was also my supervisor. The second semester of classes he took four classes for a total of twelve semester hours and working full time. It seemed as if he was trying to compete with me to get his degree. It also seems as though he is jealous that I am starting my career early in life and he waited to retire from the military then start his career. Which means that in ten years I could be he boss. He actually told me this once. I think it bothered him. And ever since I told the task leader (Gelsleichter) about the performance review, he has had it out for me. It also amazes me how I never made that statement known, I have been told several times, I just want to make sure that you know no one is out to get you. I would ask Gelsleichter why would you say that. He response would always be, I just want to make sure that you know that. My opinion is that he knows Mr. Prier doesn't like me and wants to try and keep the peace and keep me quiet.

- Are there any other reasons the employer would have taken this employment action against you?
I did admit that at the first accusation I was doing my schoolwork on a government computer after my duty hours. I would accept punishment for that, but nothing else.

- Have you previously received any disciplinary action? Explain.
From the time I started my employment (1 Jul 03) until my first performance feedback (2 Apr 04) I never received any derogatory feedback on job performance, appearance, or anything. As far as I knew, I was meeting and exceeding the set standards.

- Do you believe you were treated differently from people outside your protected class (e.g. race, religion, etc)? Provide the name and employment position of that person. What is that person's protected class? Describe how that person was treated differently and the conduct he/she engaged in.
Yes. All co-workers that are male and over age 40. They are either a senior systems analyst or systems analyst. Their protected class: over age 40. Supervisor:

Mr. Prier. All other omployees may come and go as they please (i.e. meetings, lunch, conferences, etc) where as I have to inform my military lead, my branch chief (Mr. Prier) and leave a note on the outside of my cube on a dry-erase board as to where I have gone and when I will return. If I go to the bathroom and my military lead or my branch chief stops by my cubicle and I'm not there, the next time they come by, they will say, well I came back here earlier, but you weren't at your desk. Hence my response would be where I was. This isn't the case with any of the other employees. They leave a note only when they have gone TDY or are at lunch and are not questioned as to their whereabouts. Every time I accrue comp time, I am required to prove where the time came from and ask for permission as to when I can take the time off. All other employees simply send an email or verbally tell the branch chief that they are taking their comp time. Mr. Prier would look over my cubicle every time he got up from his desk just to see if I was working or I was there. Now that my desk has moved, he has Mr. Guyne look over the cube every time he walks by to 'check on me'. They would do this to Ms. Sears as well.

- Is there any correspondence, letters, memorandums, or other documentation from you to your employer or to you from your employer?
    Yes. Have provided copies.

- Are there any witnesses to the incidents you described herein? Please provide names and addresses.
    No.

- Are you interested in pre-investigation mediation?

- Have you participated in a grievance proceeding or filed a grievance regarding this matter?

- Did you sign a waiver of rights or settlement agreement, if you were terminated? Provide a copy.
    N/A